J-A24027-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: G.M.B., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.J.B., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 566 WDA 2020 |

Appeal from the Order Entered April 22, 2020
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s): 3A-2020-O.C.

| IN RE: V.R.B., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.J.B., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 567 WDA 2020 |

Appeal from the Order Entered April 22, 2020
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s): 4A-2020-O.C.

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                    FILED DECEMBER 16, 2020

D.J.B. ("Mother") appeals from the decree entered on April 22, 2020, which terminated her parental rights as to G.M.B. and V.R.B. ("Children"). Mother's counsel has filed an Anders[1] brief and a petition to withdraw as

_____

[1] Anders v. California, 386 U.S. 738 (1967), and Commonwealth v. Santiago, 978 A.2d 349 (Pa. 2009).

counsel. Upon review, we grant counsel's petition to withdraw and affirm the decree.

G.M.B. and V.R.B. were born in September 2013 and November 2015, respectively. Jefferson County Children and Youth Services ("CYS") became involved in January 2019. N.T., 4/15/20, at 10. At that time, Mother was incarcerated and the Children were living with their maternal grandmother ("Grandmother"). Id. CYS put services in place to assist Grandmother with the Children's aggressive and sexualized behaviors. Id. at 10, 12. Despite those services, the Children continued to engage in those behaviors and Grandmother could no longer handle the Children. Id. at 12. The Children also had severe dental neglect. Id. at 7, 49. On January 28, 2019, the Children were removed from Grandmother's care and placed into two separate foster homes within a mile and a half of each other. Id. at 8-9, 11. The Children have remained in those foster homes, which are both pre-adoptive homes, continuously since they were placed there. Id. at 9-10.

CYS filed petitions for involuntary termination as to Mother's parental rights on February 6, 2020. A hearing on the petitions was held on April 15, 2020. At the hearing, Rebecca Sallack, the CYS caseworker assigned to the case, testified that Mother was ordered to undergo drug and alcohol and mental health evaluations. Id. at 14. Ms. Sallack indicated that Mother did not complete her mental health evaluation. Id. She further stated that Mother only attended her in-take appointment for her drug and alcohol evaluation on March 13, 2020 but that she "was discharged from services due to no-shows"

- 2 -

after her in-take appointment. Id. at 14-15. Ms. Sallack said that Mother was also ordered to undergo random drug testing but she only submitted to one drug test on the day of the December 11, 2019 permanency review hearing, which was positive for methamphetamines and THC. Id. at 23.

Ms. Sallack further testified that Mother had no visits or contact with her Children since the Children were placed. Id. at 10. She also stated that Mother had no contact with CYS since her release from jail in June 2019 and CYS did not know her whereabouts. Id. at 17. Ms. Sallack testified that the trial court made a finding of aggravated circumstances on August 28, 2019 due to Mother not making any efforts toward reunification for a period of six months. Id. at 24. In sum, Ms. Sallack stated:

> [Mother has] not done anything that was court ordered or has been put into, implemented into the family service plan based on the mental health treatments, the drug and alcohol treatments, keeping in contact with the agency on [her] whereabouts, not scheduling, not calling to try to set up visits with the [C]hildren[.]

Id. at 33.

Ms. Sallack further testified that the Children are very bonded to their respective foster parents. Id. at 9, 29. She stated that the Children call their respective foster parents "Mommy," "Dad," and "Daddy." Id. at 29-30, 51. Ms. Sallack said that the Children's dental issues have been resolved and their aggressive behaviors have subsided since living with their foster parents. Id. at 27, 50. Both foster homes are pre-adoptive homes and the foster parents maintain sibling visits between the Children. Id. at 10, 30. The foster parents

also take the Children to therapy and support them in their therapy. Id. at 26-27. Ms. Sallack testified that the Children are "thriving" in their current homes and all of their needs are being met. Id. at 10, 35. She opined that it would be in the Children's best interest for Mother's parental rights to be terminated and for the Children to be adopted by their foster parents. Id. at 34-36, 54.

Mother testified at the termination hearing and admitted that the last contact that she had with the Children was at a February 2019 review hearing, over one year before the termination hearing. Id. at 63, 80. Mother stated that she was aware that she needed to pass a drug test in order to have visits with the Children but admitted that she failed a drug test in December 2019. Id. at 81. Mother conceded that she had not completed her mental health or drug and alcohol evaluations. Id. at 79, 89. Mother further admitted that she had struggled to maintain housing, employment, and sobriety, and that she experienced difficulty in meeting the Children's needs in the past year. Id. at 83. Mother testified that she called her CYS caseworker on March 20, 2020, less than one month before the termination hearing, panicking about what she needed to do. Id. at 87. Mother said that she told her caseworker that she was not able to undergo drug and alcohol treatment because "the groups were being cancelled because of the quarantine [due to COVID-19]." Id. Upon cross-examination, Mother admitted that treatment centers were open prior to this time and that she did not attend treatment because the treatment

center was located next to the county's domestic relations division and she did not want to get "picked up" for an outstanding warrant. Id. at 88-89.

Following the hearing, the court entered a decree involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (a)(2), and (b). This appeal followed.

Counsel's Anders brief identifies three issues:

1. Whether the lower court erred in terminating parental rights under 23 Pa.C.S.A. § 2511(a)(1)[?]

2. Whether the lower court erred in terminating parental rights under 23 Pa.C.S.A. § 2511(a)(2)[?]

3. Whether the lower court erred in determining termination was in the [C]hildren's best interest[?]

Anders Br. at 4.

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. See Commonwealth v. Goodwin, 928 A.2d 287, 290 (Pa.Super. 2007) (en banc) (stating that "[w]hen faced with a purported Anders brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). In order to withdraw pursuant to Anders, counsel must: 1) petition the court for leave to withdraw stating that, after a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or

proceed pro se. Commonwealth v. Cartrette, 83 A.3d 1030, 1032 (Pa.Super. 2013) (en banc).

Additionally, in the Anders brief, counsel seeking to withdraw must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Commonwealth v. Santiago, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." Id. at 355 n.5 (quoting Commonwealth v. McClendon, 434 A.2d 1185, 1187 (Pa. 1981)).

Here, we find that counsel has complied with all of the above technical requirements. In his Anders brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies three issues that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with citations to the record. Additionally, counsel served Mother with a copy of the Anders brief and advised her of her right to proceed pro se or to retain a private attorney to raise any additional points she deemed worthy of this Court's

review. Petition to Withdraw, 7/20/20, at ¶ 4. Mother has not responded to counsel's petition to withdraw. As counsel has met the technical requirements of *Anders* and *Santiago*, we will proceed to the issues counsel has identified.

The first two issues presented in counsel's *Anders* brief are whether the trial court erred in terminating Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1) and (2).

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa.Super. 2018) (citation omitted). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of

the precise facts in issue." Id. (internal quotation marks and citation omitted in original).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

Id. (citations omitted). In order to affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of Section 2511(a). In re B.L.W., 843 A.2d 380, 384 (Pa.Super. 2004) (en banc).

Instantly, the trial court found termination proper pursuant to subsections 2511(a)(1) and (2), as well as under Section 2511(b). As only one basis for termination under Section 2511(a) is necessary, we will focus our attention on the trial court's termination of Mother's parental rights pursuant to subsection 2511(a)(1). That subsection permits termination if

"[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1). Since CYS filed the petitions in this case on February 6, 2020, the relevant six-month period began on August 6, 2019. The trial court found as a fact that Mother made no efforts to perform any parental duties since the time the Children were placed into foster care in January 2019.

Upon review, we find no reasonable basis in the record to support a challenge to the court's conclusion. The evidence presented demonstrated that Mother had no contact or visits with the Children since the Children were placed into care, except for one time at a permanency review hearing in February 2019. The CYS caseworker testified, and Mother, in fact, conceded that Mother failed to complete her drug and alcohol and mental health evaluations, and that she struggled to maintain housing, employment, and sobriety. Mother also failed to maintain contact with CYS and CYS did not know her whereabouts at times. Mother acknowledged that she experienced difficulty in meeting the Children's needs in the past year. It is thus clear from the record that Mother had not attempted to perform any parental duties or work toward reunification with the Children.

A parental obligation is a "positive duty which requires affirmative performance" and "cannot be met by a merely passive interest in the

development of the child." In re C.M.S., 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted). Indeed,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

In re B.,N.M., 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Here, nothing in the record would support a conclusion that Mother performed any parental duties for the Children for at least six months prior to the filing of the termination petitions. We thus conclude any challenge to the findings and conclusions pursuant to Sections 2511(a)(1) and (2) would be frivolous.

The last issue presented in counsel's Anders brief is whether the trial court erred in determining termination was in the Children's best interest pursuant to 23 Pa.C.S.A. § 2511(b). Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the

court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

The focus under Section 2511(b) is not on the parent, but on the child. In re Adoption of R.J.S., 901 A.2d 502, 508 (Pa.Super. 2006). Section 2511(b) requires the trial court to determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child[.]" In re C.M.S., 884 A.2d 1284, 1286-1287 (Pa.Super. 2005). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" Id. at 1287. The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." Id. However, the "mere existence of an emotional bond does not preclude the termination of parental rights." In re N.A.M., 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." Id. (citation and internal quotation marks omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents. In re T.S.M., 71 A.3d 251, 268 (Pa. 2013).

Here, the trial court found that terminating Mother's parental rights was in the best interest of the Children and would best serve their developmental, physical, and emotional needs and welfare. Trial Court Opinion, filed 4/22/20, at 8. The court explained that there was "no credible evidence to suggest that

[the Children] currently share a bond with Mother[.]" Id. In contrast, the court found that the Children were unquestionably bonded to their foster parents and that the Children have thrived in their care. Id.

Our review of the record reveals no reasonable basis on which to challenge the trial court's findings. We agree with the trial court that there was no evidence of an emotional bond between Mother and the Children. Mother has failed to maintain any contact with the Children since they were placed. There was evidence presented that the Children are currently thriving in their foster homes and are very bonded to their respective foster parents. The Children call their respective foster parents "Mommy," "Dad," and "Daddy." The Children's dental issues have been resolved and their aggressive behaviors have subsided since living with their foster parents. Both foster homes are pre-adoptive homes and the foster parents maintain sibling visits between the Children. The trial court found that the foster parents are willing and able to provide the Children with loving, nurturing, and stable environments. We agree with this finding. Accordingly, we also find the second issue to be frivolous.

In sum, we find that the issues raised in counsel's Anders brief are wholly frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists. Therefore, we grant counsel's petition to withdraw. Having determined that the appeal is wholly frivolous, we affirm the decree terminating Mother's parental rights.

Petition to withdraw as counsel granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2020